UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.00-6311-CR-HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLARENCE LARK, et al.

    Defendant.

_____/

**AMENDED UNITED STATES' RESPONSE IN
OPPOSITION TO LARRY CRENSHAW'S[1] EMERGENCY
PETITION FOR TEMPORARY RETURN OF SEIZED ASSETS**

The United States files this response in opposition to defendant Larry Crenshaw's emergency petition for temporary return of seized assets.

The defendants seek the return of various vehicles that were properly and legally seized pursuant to the seizure warrants issued on November 7, 2000, by United States Magistrate Judge Barry L. Garber. Judge Garber found that probable cause existed to believe the vehicles were purchased with proceeds traceable to narcotics proceeds, and were, therefore, subject to forfeiture under 21 U.S.C. §853. Judge Garber further found that the issuance of a protective order would be

---

[1] Aside from Larry Crenshaw, the petition is filed on behalf of two-third parties(non-defendants) Joyce Lark (wife of defendant Clarence Lark) and Star Choice, Inc., a Florida corporation of which Larry Crenshaw and Joyce Lark are shareholders.. Third parties, such as Joyce Lark and Star Choice, have no right to intervene or object to forfeiture matters in a criminal case until after conviction. See 21 U.S.C. §853(K) and 18 U.S.C. §1963(i); United States v. Messino, 122 F.3d 427 (7th Cir. 1997) (under section 853(K) and (n), third parties must wait until the Court has entered a preliminary order of forfeiture to challenge the forfeiture action). Additionally, third parties cannot seek return of property seized for criminal forfeiture. See United States v. Patel, 1996 WL166949 (N.D.Ill. 1996)

insufficient to protect the property during the pendency of the criminal case.

Under Title 21 § 853(f) warrants for the seizure of property are issued "in the same manner as provided for a search warrant." Under Federal Rule of Criminal Procedure 41, a defendant may file a motion for return of seized property. In order to obtain an <u>evidentiary</u> hearing the defendant must demonstrate specific facts that, if proven, would require the property to be returned. Factual allegations that are general or based on suspicion and conjecture will not suffice to obtain an evidentiary hearing. <u>United States v. Harrelson</u>, 705 F.2d 733, 737 (5th Cir. 1983); C. Wright, <u>Federal Practice and Procedure</u> § 675, pages 780-82 (1982)(collecting cases). Thus, under the facts of this case, the defendant must demonstrate facts to establish that the vehicles were not purchased with drug proceeds. The defendant, however, has provided no facts to contradict those set forth in the affidavit in support of the seizure warrants. That affidavit is attached hereto as an exhibit.

The affidavit in support of the seizure warrants sets forth specific evidence that the vehicles were purchased with narcotics proceeds. This evidence includes the anticipated testimony of drug dealer Willie Jackson as corroborated by financial records. Specifically, in total, Lark and Crenshaw accepted $720,000 in drug money from Jackson. Based on Jackson's conversations with Lark and Crenshaw, Jackson understood that vehicles for Star's Choice were purchased with narcotics proceeds supplied by Jackson. These vehicles were purchased either directly with narcotics proceeds or were purchased with drug funds that were laundered through various bank accounts. (Affidavit in Support of Seizure Warrants at ¶ 9).

Lark and Jackson agreed that they would hide the source of the drug money that was invested in Star's Choice by having various relatives of Lark purchase cashier's checks that were either later deposited in the Star's Choice bank account or otherwise used to further the activities of

the business. A portion of the drug money was laundered through the bank accounts of the following persons: Clarence Lark, Joyce Lark (Lark's wife), Blonnie Tomlin (Lark's mother); Verdell Owens (Lark's sister, and Elaine Lenon (Lark's sister) and eventually deposited into the bank account of Star's Choice. (Affidavit in support of seizure warrant at ¶ 10). The evidence supplied by Jackson is corroborated by financial records documenting that laundered funds were used to purchase the vehicles. (Affidavit in support of Seizure Warrant ¶¶ 11-27).

Furthermore, unlike bank accounts or real property, vehicles are moveable and thus a restraining order may not be sufficient to assure the availability of the property for forfeiture in the event of a conviction. Unlike the demonstration of probable cause the applicable statute does <u>not</u> require the government to demonstrate that the property will be dissipated, but only states that the government must show that a restraining order " <u>may</u> not be sufficient to assure the availability of the property for forfeiture..." 21 U.S.C. § 853(f). Because vehicles are moveable, they can be easily removed from the jurisdiction. This fact, has resulted in the supreme court allowing the government to search vehicles without first obtaining a warrant if probable cause exists. See <u>Pennsylvania v. Labron</u>, 518 U.S. 938 (1996); <u>Carrol v. United States</u>, 267 U.S. 132, 153, 160, 162 (1925). Consequently, the mobility of the vehicles demonstrate the fact that a restraining order may not be sufficient to assure the availability of the vehicles for forfeiture. Furthermore, the use of the vehicles, as proposed by the defendant, will result in wear and tear and thereby diminish their value in the event of a conviction.

Thus, the United States has demonstrated both the existence of probable cause to conclude that the vehicles will be subject to forfeiture and that a restraining order may not be sufficient to assure the availability of the property for forfeiture. The defendant has proffered no facts that would

3

vitiate these finding by the Magistrate Garber. Consequently, the defendant's motion should be denied without the need for an evidentiary hearing.

## CONCLUSION

The defendant's motion is without merit and should be denied without an evidentiary hearing.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
WILLIAM H. BECKERLEG, JR.
Assistant United States Attorney
500 E. Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Tel: (954) 356-7314, ext. 3614
FAX: (954) 356-7180
Fla. Bar No. A5500074

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing was faxed and mailed this 26th day of March, 2001, to Paul D. Lazarus, Esq., 800 Brickell Avenue, PH-2, Miami, FL 33131-2944 at FAX No. (305) 358-4010.

_____
WILLIAM H. BECKERLEG, JR.
Assistant U.S. Attorney

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Darrin S. Sachs, Special Agent (SA), of the Federal Bureau of Investigation (FBI), Miami, Florida, being duly sworn, say the following is true based upon my personal knowledge and belief:

### INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have held that position since May of 1996. For the past three and one half years, I have been assigned primarily to investigations of organized crime and labor racketeering.

2. The information contained in this affidavit is from Affiant's personal knowledge and participation in the investigation and reports (oral and written) made available to me by other agents of the United States Customs Service, the Internal Revenue Service, the United States Department of Labor, and the Drug Enforcement Administration.

### PROPERTY SOUGHT FOR SEIZURE

3. This affidavit is being submitted in support of the seizure and forfeiture of the following vehicles that were purchased in part with funds derived from the sale of narcotics:

   A 1988 Ford CF6000 Truck, VIN #9BFPH60P6JDM00085;
   A 1987 Ford CF6000 Truck, VIN #9BFPH60P3HDM03231;
   A 1986 Ford CF6000 Truck, VIN #9BFPH60P9GDM00929;
   A 1987 Ford CF6000 Truck, VIN #9BFPH60P2HDM01809;

A 1992 UD Truck, VIN #JNAU4R0J8NAM04106;

A 1996 Ford Tractor, VIN #1FDYA95D7TVA20667;

A 1996 Ford Tractor, VIN #1FDYA95D5TVA20666;

A 1995 Ford F350 Truck, VIN #1FTJW35G0SEA79864;

A 1995 Ford F350 Truck, VIN #1FTJW35G8SEA79868;

A 1995 Ford F350 Truck, VIN #1FTJW35F1SEA72929;

A 1995 Ford F350 Truck, VIN #1FTJW35F4SEA72925;

A 1995 Ford F350 Truck, VIN #1FTJW35F9SEA74668;

A 1995 Ford F350 Truck, VIN #1FTJW35F2SEA74737;

A 1995 Ford F350 Truck, VIN #1FTJW35F6SEA74661;

A 1996 Trailer, VIN #1S9A3AL29TT010035 (Part of the "Honey Wagon").

These vehicles were named in the forfeiture section of an indictment that was returned, under seal, on October 31, 2000, which is to be unsealed on November 6, 2000. Thus, a federal grand jury has determined that there is probable cause to believe that the above described vehicles should be forfeited to the United States. The vehicles are presently in Miami-Dade County.

**FACTS**

4. On September 28, 1998, Willie Jackson was indicted by a Grand Jury in the Southern District of Florida for narcotics violations. Jackson, who was a member of Teamsters Union Local 390 was responsible for importing controlled substances into the

2

United States through Port Everglades. Jackson entered a guilty plea and is cooperating with the Government. Jackson's crew of smugglers, composed of stevedores and others, were responsible for smuggling thousands of kilograms of cocaine and thousands of pounds of marijuana into the United States. Jackson is scheduled to be sentenced on November 2000.

5. The majority of drugs were smuggled into the United States through Crowley American Transport, Inc. (Crowley). Crowley is a maritime shipping company based in the United States that is engaged in the business of shipping goods into and out of the United States. Crowley has a contract for labor with the Teamsters Union Local 390. Teamsters Local 390 supplied stevedores to Crowley to load and unload ships. During debriefings of Jackson by Special Agents of the United States Customs Service, Jackson estimated that he made over $11 million during his participation in this ongoing drug enterprise.

6. Jackson advised that he met with Clarence Lark and Larry Crenshaw in or about August 1995 in order to ensure the smooth operation of the narcotics smuggling venture. Lark was president of Teamsters Local 390 until 1996, and thereafter exercised influence over the Union following his removal by the Independent Review Board (IRB). Lark accepted an initial payment of $200,000 in cash from Jackson. Crenshaw is Lark's brother-in-law and assisted Lark in the corrupt operations of Local 390. Lark

agreed to ensure that Jackson could place stevedores who were members of the organization in duty assignments that would allow them to remove the smuggled narcotics. They also agreed that Jackson's stevedores could have favored assignments at Port Everglades.

7. During the course of the meeting in or about August 1995, Lark asked Jackson if he was interested in becoming a silent partner in Lark and Crenshaw's movie production support company Star's Choice. Jackson stated that he was interested, and Lark and Crenshaw accepted additional drug monies that he used to purchase and refit the trucks for Star's Choice, Inc.

8. Stars Choice was operated by Lark, Joyce Lark (Lark's wife) and Larry Crenshaw. Crenshaw is also a member of Teamsters Local 390. Lark was also a silent partner, but was nevertheless responsible for the operation of Star's Choice. The vehicles purchased by Star's choice were financed by the drug money supplied by Willie Jackson.

9. In total, Lark and Crenshaw accepted $720,000 in drug money from Jackson. Based on Jackson's conversations with Lark and Crenshaw, Jackson understood that vehicles for Star's Choice were purchased with narcotics proceeds supplied by Jackson. These vehicles were purchased either directly with narcotics proceeds or were purchased with drug funds that were laundered through various bank accounts.

4

10. Lark and Jackson agreed that they would hide the source of the drug money that was invested in Star's Choice by having various relatives of Lark purchase cashier's checks that were either later deposited in the Star's Choice bank account or otherwise used to further the activities of the business. A portion of the drug money was laundered through the bank accounts of the following persons: Clarence Lark, Joyce Lark (Lark's wife), Blonnie Tomlin (Lark's mother); Verdell Owens (Lark's sister, and Elaine Lenon (Lark's sister) and eventually deposited into the bank account of Star's Choice.

11. The below described vehicles were, all of which are titled in the name of Star's Choice, were purchased with narcotics proceeds as described above:

12. On August 24, 1995, Larry Crenshaw paid $10,399.95 in cash to purchase a 1988 Ford CF6000 Truck, VIN #9BFPH60P6JDM00085 from Rody Truck Center.

13. On August 24, 1995, Larry Crenshaw paid $10,399.95 in cash to purchase a 1987 Ford CF6000 Truck, VIN #9BFPH60P3HDM03231 from Rody Truck Center.

14. On August 24, 1995, Larry Crenshaw paid $9,399.95 in cash to purchase a 1986 Ford CF6000 Truck, VIN #9BFPH60P9GDM00929 from Rody Truck Center.

15. On September 1, 1995, Larry Crenshaw paid $10,699.95 in cash to purchase a 1987 Ford CF6000 Truck, VIN #9BFPH60P2HDM01809

from Rody Truck Center.

16. On October 22, 1995, Larry Crenshaw paid $10,775.00 in cash to purchase a 1992 UD Truck, VIN #JNAU4R0J8NAM04106 from Rody Truck Center.

17. In or about October 1995, Larry Crenshaw paid a cash deposit in the amount of $10,000 to Palmetto Ford Truck Sales, Inc., for the purchase of a 1996 Ford Tractor VIN #1FDYA95DTVA20666 and a 1996 Ford Tractor, VIN #1FDY95D7TVA20667.

18. On November 10, 1995, Star's Choice purchased a 1995 Ford F350, VIN#1FTJW35G0SEA79864 from Koons Ford. Joyce Lark issued a check from Star's Choice, Inc., checking account number 1596371680 at Barnett Bank in the amount of $22,942.50 to Koons Ford for the purchase of the truck.

19. On November 10, 1995, Star's Choice purchased a 1995 Ford F350 VIN #1FTJW35G8SEA79868 from Koons Ford. Joyce Lark issued a check from Star's Choice, Inc., checking account number 1596371680 at Barnett Bank in the amount of $22,942.50 to Koons Ford for the purchase of the truck.

20. On September 1, 1995, Star's Choice purchased a 1995 Ford F350, VIN #1FTJW35F1SEA72929 from Koons Ford. Joyce Lark paid $3,280.00 in cash, $2,406.66, in a check and $23,018.94 in a loan from Ford Motor Credit.

21. On September 1,1995, Star's Choice purchased a 1995 Ford F350, VIN #1FTJW35F4SEA72925 from Koons Ford. Joyce Lark

6

paid $3,280.00 in cash, $2,406.66 in a check, and $23,018.95 in a loan from Ford Motor Credit.

22. On September 5, 1995, Star's Choice purchased a 1995 Ford F350, VIN #1FTJW35F9SEA74668 from Koons Ford. Joyce Lark paid $3,280.00 in cash, $2,406.68 in a check, and $23,551.12 in a loan from Ford Motor Credit.

23. On September 30, 1995, Star's Choice purchased a 1995 Ford F350 truck, VIN #1FTJW35F2SEA74737 from Koons Ford. Joyce Lark paid $27,000 in a check.

24. On September 30, 1995, Star's Choice purchased a 1995 Ford F350 truck, VIN #1FTJW35F6SEA74661 from Koons Ford. Joyce Lark paid $6,000 in cash and $22,967.23 in a loan from Ford Motor Credit.

25. In addition to the purchase of vehicles, Jackson stated that money was given for the outfitting of vehicles to serve as dressing and recreation rooms for movie stars. These vehicles are called in the industry "Honey Wagons." The below listed financial transactions occurred in connection with the outfitting of the "Honey Wagon" involved in the instant case:

26. On January 9, 1996, Clarence Lark Jr gave Jerry Pebbles, President of Southern Truck Body Corp a deposit in the amount of $40,000.00 in cash & cashier's checks to construct a Honey Wagon. The Honey Wagon is a 1996 Trailer, VIN #1S9A3AL29TT010035. The $40,000.00 deposit consisted of 5

deposit items, which are as follows:

    a.    $2,000.00 cash

    b.    Cashier's check #CC013181 made payable to Southern Truck & Body in the amount of $14,000.00 from Blonnie Tomlin's savings account at Dade County School Employee Credit Union. Cashier's check #CC000471480 made payable to Southern Truck Body Corp in the amount of $14,000.00 from Blonnie Tomlin's savings account at First Union Bank.

    c.    Personal check #811 made payable to Southern Truck Body Corp in the amount of $5,000.00 from Larry Crenshaw's checking account at First Union Bank.

    d.    Cashier's check #309843 made payable to Southern Truck Body Corp in the amount of $5,000.00 from at Nations Bank. The Purchaser was unknown and the name was marked out on the check.

    27.    On June 26, 1996, Clarence Lark Jr gave Jerry Pebbles, President of Southern Truck Body Corp an additional deposit in the amount of $40,000.00 in cashier's checks to construct the Honey Wagon. The $40,000.00 deposit consisted of 4 deposit items, which are as follows:

    a.    Cashier's check #CC016391 made payable to Southern Truck Body Corp in the amount of $5,000.00 from Blonnie Tomlin's savings account at Dade County School Employee Credit Union.

    b.    Cashier's check #001382576 made payable to Southern Truck Body Corp in the amount of $5,000.00 from Blonnie Tomlin's

savings account at First Union Bank.

    c.    Cashier's check #860555645 made payable to Southern Truck Body Corp in the amount of $15,000.00 from Joyce Lark's savings account at Barnett Bank.

    d.    Cashier's check # 002182192 made payable to Southern Truck Body Corp in the amount of $15,000.00 from Larry Crenshaw's savings account at First Union Bank.

    28.    On August 23, 1996, Clarence Lark, Jr. gave Jerry Pebbles, President of Southern Truck Body Corp cashier's check #509984596 in the amount of $20,000.00 for an additional deposit to construct the Honey Wagon. The funds to purchase the cashier's check were obtained from Star's Choice, Inc., account number 1596371680 at Barnett Bank.

    29.    Based on the specific information received from Willie Jackson which was corroborated by tax returns, bank records, telephone toll records, and witness interviews probable cause exists to support the conclusion that the funds used to purchase the aforementioned vehicles were derived from narcotics proceeds.

    30.    Further, based on the above, I submit that there is probable cause to believe that the above mentioned vehicles are subject to forfeiture pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1) for violations of Title 21 United States Code, Section 965, 846 and Title 18, United States Code, Section 1956(a)(1)(B)(i).

    31.    Seizure warrants are necessary to prevent the removal

from the district, or sale, concealment and/or its derived proceeds. Wherefore, seizure warrants for the above mention vehicles are requested.

---
DARRIN S. SACHS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed to and sworn to before me this 7th day of November, 2000.

---
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

10