UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6311-CR-HUCK

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
v.                             )
                               )
CLARENCE LARK, et al.          )
                               )
            Defendants.        )
_____)

<u>GOVERNMENT'S TRIAL MEMORANDUM</u>

Comes now The United States of America and hereby files its trial memorandum.

**I Introduction**

This is a prosecution centering around the smuggling of controlled substances through Port Everglades and their subsequent distribution.  The smuggling was made possible by the corrupt leadership of Teamsters Local 390, which was controlled by defendant CLARENCE LARK. LARK was the President of Local 390 until he was removed by the Independent Review Board (IRB). Even after his removal, LARK, however exercised a considerable influence over the affairs of the union.  LARK's brother-in-law LARRY CRENSHAW assisted LARK in his corrupt activities.

All defendants are named in the narcotics conspiracy, however, only and CLARENCE LARK and his brother-in-law LARRY CRENSHAW are named in the Racketeering Influenced and Corrupt Organizations



(RICO) count. Only LARK and CRENSHAW are named in the RICO count because their corrupt union activities, which made the drug smuggling possible, went beyond smuggling drugs and included extortion and other criminal activities.[1]

The charged RICO enterprise is Teamsters local 390, which LARK and CRENSHAW both participated in through a pattern of unlawful activity, including, drug trafficking, money laundering and extortion. Willie Jackson, a Teamsters union member who smuggled drugs, was LARK's primary contact with regard to drug trafficking. Jackson is now a government witness following his guilty plea to narcotics trafficking and is the primary enterprise structure witness.

LARK used his position as President of Teamsters Local 390 to facilitate the smuggling of drugs and the laundering of drug proceeds. In addition, LARK, and his brother in law, LARRY CRENSHAW, enriched themselves by extorting union members for payments of cash before authorizing the union members to work at particularly desirable locations, e.g., the movie industry. LARK also accepted payments from his employer, Crowley American Transport Services, a maritime shipping company, for favorable treatment in Union negotiations. These acts extended back to the mid 1980's and, therefore, the charged RICO starts from 1985.

---

[1] This case arises out of the original indictment and trial in <u>United States v. McCleod</u> et al. 98-6015-CR-Hurley(s)(s)(s). The trial of that case occurred in June and July 1999.

Jackson was introduced to LARK by CURTIS NEWTON, who is a member of the International Longshoremen Association (ILA) and an important member of the narcotics conspiracy. The purpose of this introduction was to facilitate the trafficking of narcotics through Port Everglades. NEWTON brokered several of the large narcotics smuggling ventures.

Other members of the narcotics conspiracy included: WILLIAM GARCIA, who was a source for much of the smuggled cocaine; various dock workers, who were members either of the Teamsters Union or the ILA, and who physically removed the cocaine from containers located on Port Everglades; and other persons who assisted in the smuggling and distribution of the drugs. These persons included RICARDO MCHORNE, KEITH LAMPKIN, and LAWRENCE SEYMORE. Many other dockworkers were charged and indicted in the previous trial before Judge Hurley. Well over 30 persons have been convicted either by trial or guilty plea in the Port Everglades narcotics trafficking cases.

## II Identification of Defendants Pending Trial

1. CLARENCE LARK was born on November 7, 1943. LARK was the former President of Teamsters Local 390 before he was removed by the Independent Review Board (IRB) in March 1996.[2] Teamsters Local

---

[2] The Independent Review Board (IRB) was established following a civil RICO suit filed in the Southern District of New York. The purpose of the board is to investigate allegations of corruption in the Teamsters Union. The IRB recommended LARK'S removal in March 1996. This recommendation was made final on

3

390 is a large and diverse local composed of, _inter alia_, stevedores employed by Crowley American Transport Services (a maritime shipping company), drivers employed by the movie industry, truck drivers employed by various carting companies and employees of rental car companies. The IRB removed LARK because he required union members to pay him before they would receive choice job assignments in the movie industry and for nepotism. LARK used his position to further narcotics trafficking by members of the union, launder narcotics proceeds and accept bribe payments from company officials for agreeing to union contracts that favored Crowley. Even after his removal, LARK exercised considerable control over the affairs of the union through a variety of persons including Israel Brinson, who is now deceased.

2.    LARRY CRENSHAW was born on January 24, 1949. CRENSHAW is a member of Teamster Local 390, and was removed as a transportation captain by the IRB in March 1996. CRENSHAW is LARK's brother in law. He participated in the enterprise by laundering drug funds, accepting drug funds for use in his business, and receiving and soliciting extortion payments from union members.

3.    WILLIAM GARCIA was born on October 30, 1963. GARCIA was the source of supply for the majority of narcotics smuggled by the enterprise. GARCIA is a fugitive.

4.    CURTIS NEWTON was born on November 14, 1945. NEWTON is

---

September 16, 1996.

4

a member of the International Longshoreman's Association (ILA) and works as a header at the Port of Miami.  A header is a leader of a work group that unloads a ship. NEWTON brokered several of the drug loads and also introduced LARK to Jackson for the purpose of smuggling drugs through Port Everglades.

5.    RICARDO MCHORNE was born on August 27, 1960.  MCHORNE is a member of the ILA and is a header for a stevedore crew at the Port of Miami.  MCHORNE assisted Jackson by distributing cocaine that had been removed from Port Everglades. On March 7, 1988 MCHORNE was charged with possession with intent to distribute cocaine, he was convicted and was sentenced to 36 months incarceration.

6.    LAWRENCE SEYMORE was born on July 11, 1968 and resides at 4401 NW 193rd Street, Miami, Fl.  His social security number is 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.  He is a member Teamsters Local 390 and used his position and relationship with his then girl friend, Jane Hartley, to obtain paperwork showing that drug shipments were, in fact, seized by customs authorities.

**III Summary of the Charges**

| COUNTS | CHARGE | DEFENDANTS |
|--------|--------|------------|
| 1 | 18 U.S.C. 1962 (d)<br>(Rico Conspiracy) | CLARENCE LARK<br>LARRY CRENSHAW |

| COUNTS | CHARGE | DEFENDANTS |
|--------|--------|------------|
| 2 | 21 U.S.C. 963<br><br>(Narcotics Importation<br><br>Conspiracy) | CLARENCE LARK<br><br>LARRY CRENSHAW<br><br>WILLIAM GARCIA<br><br>CURTIS NEWTON<br><br>KEITH LAMPKIN<br><br>LAWRENCE SEYMORE |
| 3 | 21 U.S.C. 846<br><br>(Narcotics Distribution<br><br>Conspiracy) | ALL |
| 4 | 18 U.S.C. 1956(h)<br><br>(Money laundering<br><br>Conspiracy) | CLARENCE LARK<br><br>LARRY CRENSHAW |
| 5 | 18 U.S.C. 1956(h)<br><br>(Money Laundering<br><br>Conspiracy) | JOHN GALLO |
| 6-13 | 18 U.S.C. 1956<br><br>(Substantive Money<br><br>Laundering) | CLARENCE LARK |
| 14-16 | 18 U.S.C. 1957<br><br>(Substantive Money<br><br>Laundering) | LARRY CRENSHAW |

| COUNTS | CHARGE | DEFENDANTS |
|---|---|---|
| 17-34 | 18 U.S.C. 1956 (Substantive Money Laundering) | JOHN GALLO |
| 35 | 21 U.S.C. 952 (Drug Importation) | WILLIAM GARCIA |
| 36 | 21 U.S.C. 841 (Possession with Intent to Distribute) | WILLIAM GARCIA RICARDO MCHORNE |
| 37 | 21 U.S.C. 952 (Drug Importation) | KEITH LAMPKIN |
| 38 | 21 U.S.C. 841 (Possession with Intent to Distribute) | CHARLIE HALL KEITH LAMPKIN |
| 39 | 21 U.S.C. 843 (b) (Use of Communications Facility in Furtherance of drug Trafficking) | LAWRENCE SEYMORE |
| 40 | 21 U.S.C. 952 (Drug Importation) | WILLIAM GARCIA |
| 41 | 21 U.S.C. 952 (Drug Importation) | WILLIAM GARCIA |
| 42 | 21 U.S.C. 952 (Drug Importation) | CURTIS NEWTON |

| COUNTS | CHARGE | DEFENDANTS |
|--------|--------|------------|
| 43 | 21 U.S.C. 841<br><br>(Possession with Intent<br><br>to Distribute) | CURTIS NEWTON<br><br>CHARLIE HALL |

III.   <u>STATEMENT OF THE LAW</u>

III.   <u>STATEMENT OF THE LAW</u>

**A. <u>RICO CONSPIRACY</u>**

A RICO conspiracy is charged in Count 1 of the Indictment. There is no substantive RICO charge.

Title 18, United States Code, Section 1962(c) provides in pertinent part:

> (c)  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Title 18, United States Code, Section 1962(d) provides in pertinent part:

> (d)  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The essential elements of a RICO conspiracy are: (1) that the conspiracy was wilfully formed and was existing on or about the time alleged and (2) that each defendant agreed to participate directly or indirectly in the affairs of the enterprise. <u>Salinas v.</u>

8

United States, __U.S.__, 118 S. Ct. 469, 476-77 (1997); United States v. Elliot, 571 F.2d 880, 900-907 (5th Cir.), cert. denied sub nom. Delph v. United States, 459 U.S. 953 (1978). There is no requirement that an overt act be alleged or proven as an element of RICO conspiracy. Salinas v. United States 118 S. Ct. at 476-77; United States v. Starrett, 55 F.3d 1525, 1543-44 (11th Cir. 1995). The agreement may be proven by inferences drawn from relevant and competent circumstantial evidence -- ordinarily the acts and conduct of the alleged conspirators themselves. United States v. Elliot, 571 F.2d at 900-07.

As in other conspiracy cases, the government is required to prove an agreement as to the objects of the conspiracy. In this case, the defendants are charged with conspiracy to violate a substantive RICO offense, Title 18, United States Code, Section 1962(c) -- that is, to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. Consequently, it is the agreement to participate in the affairs of the enterprise by assisting in the commission of two or more predicate crimes that forms the basis of the pattern of racketeering that is the object of the conspiracy. Salinas v. United States 118 S.Ct. at 476; United States v. Starrett, 55 F.3d at 1554; United States v. Elliot, 571 F.2d at 900-07; United States v. Pepe, 747 F.2d 632, 645 (11th Cir. 1984); United States v. Watchmaker, 761 F.2d 1459, 1475 (11th Cir. 1984).

9

The government can prove an agreement of an overall objective by circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity. United States v. Starrett, 55 F.3d at 1543-44. Regardless of the method used to prove the agreement, the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy. Id. at 1544.

In order to establish a RICO conspiracy, the United States must show that the defendant conspired to violate the substantive RICO provision by agreeing that at least two predicate acts would be committed; the United States need not prove that the defendant agreed to personally commit two predicate acts. Salinas v. United States, ___ U.S. ___, 118 S. Ct. at 477-78 (1997); United States v. Starrett, 55 F.3d at 1554; United States v. Rosenthal, 793 F.2d 1214, 1229 (11th Cir. 1986), United States v. Carter, 721 F.2d 1514, 1531 (11th Cir. 1984).

In proving a RICO conspiracy the United States need not establish that the defendant knew the full scope of the conspiracy or the identity of all co-conspirators to be convicted of RICO conspiracy. Salinas v. United States, 118 S. Ct. at 477-78; United

States v. Starrett, 55 F.3d at 1544; See United States v. Cagnina, 697 F.2d 915, 922 (11th Cir. 1983), cert. denied, 464 U.S. 856 (1983), United States v. Elliot, 571 F.2d at, 903-04.  Moreover, the fact that each conspirator may have contemplated participating in different and unrelated crimes is irrelevant. Salinas v. United States, 118 S.Ct. at 477-78; United States v. Starrett, 55 F.3d at 1544; United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313, 1319 (7th Cir.) (en banc), cert. denied, 454 U.S. 1082 (1981).  The United States need only prove that each defendant conspired to commit the substantive RICO offense and was aware that others had done likewise. Salinas v. United States, 118 S. Ct. at 476-77 (1997) Sutherland, 656 F.2d at 1193, 1194. See Elliot, 571 F.2d at 903.

Indeed, as recently articulated by the Court in Salinas, "the RICO conspiracy provision, then is even more comprehensive than the general conspiracy offense in section 371." Salinas v. United States, 118 S.Ct. at 476.  The interplay between the substantive and conspiracy provisions of the RICO statute "does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." Salinas v. United States,  118 S. Ct. at 477.

The evidence in this case will establish that LARK, who was a leader of the enterprise, conspired to commit and or profit from at

least two of the predicate offenses. LARK was the ultimate beneficiary of the criminal activities under taken by the enterprise.

**B. NARCOTICS CONSPIRACY**

The instant indictment charges two narcotics conspiracies: A conspiracy to import narcotics (count 2) and a conspiracy to possess narcotics with the intent to distribute (Count3). The elements of a narcotics conspiracy are:

1)    That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan related to a controlled substance; and

2) That the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

Eleventh Circuit Pattern Instruction No. 75 (1997)

C. **MONEY LAUNDERING CONSPIRACY 18 U.S.C. 1956**

The indictment charges two separate money laundering conspiracies, one involving the defendants LARK and CRENSHAW (Count 4) and the other involving the defendant GALLO (Count 5). GALLO has entered a guilty plea.

The elements of money laundering conspiracy are that the defendant agreed with another person to do the following:

First: That the defendant knowingly agreed to conduct, or attempted to conduct, a financial transaction.

Second: That the defendant knew that the funds or property

12

involved in the transaction represented the proceeds of some form of unlawful activity;

Third: That the defendant agreed to engage in the financial transaction with the intent to promote the carrying on of such specified unlawful activity or to hide the nature and source of the illegally generated funds.

Eleventh Circuit Instruction 60.1 (1997)

**D.    IMPORTATION OF CONTROLLED SUBSTANCES**

The indictment charges substantive drug importations in Counts 35, 37, 40, 41 and 42.  The elements of importation of a controlled substance are:

1) That the defendant imported a controlled substance into the United States from a place outside thereof; and

2) That the defendant did so knowingly and willfully.

Eleventh Circuit Pattern Instruction No.78 (1997).

**E.    POSSESSION OF A CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE**

The indictment charges substantive possessions of narcotics with the intent to distribute in Counts 36, 38 and 43.    The elements of possessing a controlled substance with the intent to distribute it are:

1) That the defendant knowingly and willfully possessed the controlled substance; and

2) That the Defendant possessed the substance with the intent

13

to distribute it.

Eleventh Circuit Pattern Instruction No. 73 (1997).

**F. SUBSTANTIVE MONEY LAUNDERING, 18 U.S.C. 1956**

The Defendant Clarence Lark is charged with substantive violations of Section 1956 in Counts 6-13. The Elements of the charged Section 1956 money laundering crimes are:

1) That the defendant knowingly conducted, or attempted to conduct, a financial transaction;

2) That the defendant knew that the funds or property involved in the financial transaction did in fact represent the proceeds of some form of unlawful activity;

3) That the funds or property involved in the financial transaction represented the proceeds of a specified unlawful activity;

4) That the defendant engaged in the financial transaction either: *(i)* with the intent to promote the carrying on of the specified unlawful activity; or *(ii)* with the intent to disguise in whole or in part the nature location, source, ownership or control of the proceeds from the specified unlawful activity.

Eleventh Circuit Pattern Instruction 60.1 & 60.2 (1997).

**G.  SUBSTANTIVE MONEY LAUNDERING, 18 U. S. C. 1957**

The defendant Larry Crenshaw is charged with substantive violations of Section 1957 in Counts 14-16.  The elements of the charged Section 1957 crimes are:

14

1) The defendant knowingly conducted a monetary transaction;

2) The monetary transaction was in property greater than $10,000 derived from a specified unlawful activity;

3) The defendant knew that the monetary transaction involved proceeds of a criminal offense;

4) The monetary transaction affected interstate commerce;

Eighth Circuit Pattern Instruction 6.18.1957 (2000)

B.    **EVIDENTIARY CONSIDERATIONS**

1.    Co-conspirator Statements are Admissible

The United States intends to introduce unrecorded conversations during its case-in-chief in which the conspirators discussed the operation of the conspiracy.    Although all the defendants do not participate in all these conversations, the hearsay declarants frequently refer to defendants not present and discus the roles of the absent conspirators and their responsibilities in the overall conspiracy. In these discussions, the conspirators refer to the actions of each other.

The United States submits that these conversations are admissible under the provisions of Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that all statements made during the course and in furtherance of a conspiracy are admissible into evidence.    Co-conspirator statements are not considered hearsay and are, therefore, admissible in evidence.

In order for statements to be admissible under Rule

15

801(d)(2)(E), the United States must show by a preponderance of the
evidence that: (1) a conspiracy existed; (2) both the declarant and
the person against whom the statements are offered were members of
the conspiracy; (3) the statements were made during the scope of
the conspiracy; and (4) the statements were made in furtherance
thereof.  <u>Bourjaily v. United States</u>, 483 U.S. 171, 175 (1987).

In determining whether a conspiracy existed, the court may
consider the hearsay declarant's statements themselves.  <u>Bourjaily</u>,
483 U.S. at 1819.    The defendant need not be party to the
conversation for the conversation to be admissible; the declaration
of one co-conspirator is admissible against all other members of
the conspiracy.   <u>United States v. Tombrello</u>, 666 F.2d 485, 491
(11th Cir.), <u>cert</u>. <u>denied</u>, 456 U.S. 994 (1982); <u>United States v.</u>
<u>Lampley</u>, 68 F.3d 1296, 1301 (11th Cir. 1995) (co-conspirator
statement admissible even though defendant was not a member of the
conspiracy at the time statement was made.)

The   Eleventh   Circuit   applies   "a   liberal   standard   in
determining  whether  a  statement  is  made  in  furtherance  of  a
conspiracy."  <u>United States v. Santiago</u>, 837 F.2d 1545, 1549 (11th
Cir. 1988).  The statement need not be necessary to the conspiracy,
but  must  only  further  the  interest  of  the  conspiracy  in  some
manner.   In <u>Santiago</u>, the Court concluded that "boasts and other
conversations  maybe  in  furtherance  of  a  conspiracy  if  such
statements  are  used  to  obtain  the  confidence  or  to  allay  the

suspicions of a co-conspirator."   837 F.2d at 1549.

In this case, many of the conversations include co-conspirators who are presently government witnesses. Specifically, the United States will seek to introduce conversations that Willie Jackson, Lionell "Ron" Welch had with themselves and with the defendants in this case. Although Willie Jackson and Lionel Welch are now both government witnesses they were not cooperating at the time the conversations were recorded. These conversations were made to further the conspiracy in that it was critical to the conspiracy that its members be aware of certain illegal activities of other conspirators. Just as information is critical in a legal business venture, information about the illegal activities of the conspiracy was crucial to its overall operation.

As noted previously, the defendant against whom the conversation is sought to be admitted is not always a party to the recorded conversations. The statements themselves and independent evidence, e.g., admissions made by the remaining defendants and others will establish that a conspiracy existed and that all the remaining defendants were members of the conspiracy. Cooperating witnesses Willie Jackson, Lionel Welch and others  will testify regarding the existence and structure of the conspiracy.

The admissibility of coconspirator's statements to be determined by the trial judge, who may consider any relevant evidence, including the hearsay statements sought to be admitted.

17

The court need only determine that the conspiracy existed and the defendant participated in it.    Independent inquiry into the reliability of the statement is no longer required.  <u>Bourjaily v. United States</u>, 483 U.S. at 182-183; <u>United States v. Cerone</u>, 830 F.2d. 938, 848 (8th Cir. 1987).

Given these general guidelines, the following types of statements have been held to fall within the scope of the coconspirator's provision:

(1) In a complicated conspiracy involving varied objectives including financial gain, retaliation, and subversion of investigations, statements discussing past events, because it is necessary to fully discuss past events in order to map future strategies--<u>United States v. Haldeman</u>, 559 F.2d 31, 110-11 (D.C. Cir. 1976), <u>cert</u>. <u>denied</u>, 431 U.S. 933 (1977);

(2)  Statements identifying coconspirators and their roles in the conspiracy -- <u>United States v. Handy</u>, 668 F.2d at 408; <u>United States v. Williams</u>,  604 F.2d 1102-1113-14 (8th Cir. 1979);

(3) Statements designed to attract potential coconspirators, enlist the aid of individuals or guarantee an individual's cooperation with the objectives of the conspiracy -- <u>United States v. Overshon</u>, 494 F.2d 894, 899 (8th Cir.), 419 U.S. 853 (1974); <u>United States v. Jackson</u>, 549 F.2d 517, 584 (8th Cir.), <u>cert</u>. <u>denied</u>, 430 U.S. 985 (1977); <u>United States v. Layton</u>, 720 F.2d at 557-58;

(4)   Statements   that inform a   prospective   or   current

coconspirator of the progress of the conspiracy -- <u>United States v.</u>

<u>Handy</u>, 668 F.2d at 408; <u>United States v. Goodman</u>, 605 F.2d 870,

877-78 (8th Cir. 1979);

(5) Statements that reinforce loyalty or allay apprehension or

fear -- <u>United States v. Overshon</u>,  494 F.2d at 899; <u>United States</u>

<u>v. Pardo-Bollard</u>, 348 F.2d 316, 324-25 (2d Cir.), <u>cert</u>. <u>denied</u>, 382

U.S. 944 (1965);

(6) Statements between conspirators which provide reassurance,

serve to maintain trust and cohesiveness among them or inform each

other of the current status of the conspiracy; <u>United States v.</u>

<u>Ammar</u>, 714 F.2d 238, 252 (3d Cir.), <u>cert</u>. <u>denied</u>, 464 U.S. 936

(1983);

(7) Statements which implicitly induce fear in the listener or

which arm the listener with information so as to implicate the

listener in some aspect of the criminality--<u>United States v. Sears</u>,

663 F.2d 898, 901 (9th Cir. 1981), <u>cert</u>. <u>denied</u>, 455 U.S. 1027

(1982);

(8) Statements appearing as puffing or boasting which serve to

reinforce confidence--<u>United States v. Miller</u>, 664 F.2d 94, 98 (5th

Cir. 1981), <u>cert</u>. <u>denied</u>, 459 U.S. 854 (1982); <u>United States v.</u>

<u>McGuire</u>, 608 F.2d 1028, 1032-33 (5th Cir. 1979), <u>cert</u>. <u>denied</u>, 454

U.S. 1092 (1980);

(9) Statements identifying a coconspirator as a source of

19

narcotics--<u>United States v. Lambros</u>, 564 F.2d 26, 30 (8th Cir.
1977), <u>cert</u>. <u>denied</u>, 434 U.S. 1074 (1978).

In some instances, the United States may seek to
introduce conversations which occurred after the declarant (co-
conspirator) was arrested for his related criminal involvement. The
Eleventh Circuit has addressed this issue and affirmed the
admission of such evidence in appropriate cases. In <u>United States
v. Jones</u>, 913 F.2d 1552, 1563 (11th Cir. 1991), the defendant
Minyard challenged the admission into evidence of a tape-recorded
telephone conversation between two of his co-defendants (Jones and
Ivester) which was obtained after Jones had been arrested and which
contained statements incriminating Minyard. Minyard claimed that
the tape should not have been admitted as recorded coconspirator
statements under Fed.R.Evid. 801(d)(2)(E) because the statements on
the tape were not made during and in furtherance of the conspiracy
and therefore constituted inadmissible hearsay. The court rejected
the defendant's claim and noted that the relationship between the
declarant and the accused was the  critical inquiry -- not the
relationship between the declarant and the informant.  <u>United
States v. Jones</u>, 913 F.2d at 1563. Citing <u>Bourjaily</u> and its
Eleventh Circuit progeny, the Court determined that the statement
was made during the course and in furtherance of the conspiracy
even though one of the speakers had already been arrested for
crimes committed during the course of the conspiracy.

## 2. Similar Act Evidence

The United States anticipates that the defendant will challenge certain evidence arguing that is inadmissible similar act evidence. In reality, however, this evidence relates directly to the charged offenses.

In order to establish the intent and motive of the defendants Hall, Mchorne and Newton[3] the United States intends to introduce evidence that all three defendants engaged in other drug transactions close in time to the charged conspiracy. This evidence includes the conviction of Hall in 1985 in the Broward County Circuit Court for trafficking in Cannabis and the conviction of McHorne in 1989 in this Court for conspiracy to possess cocaine with the intent to distribute. In addition, the United States intends to offer, through the testimony of now government witness Rodney Jackson[4], evidence that McHorne participated with Rodney Jackson in a series of narcotics importations and attempted importations in 1991-1994. Rodney Jackson will also testify to narcotics transactions in which he participated with defendant Newton.

---

[3] Newton has not filed a motion to exclude this evidence, which as noted in the government's discovery response consists of evidence that he participated in narcotics transaction with Rodney Jackson, who is now a government witness. Rodney Jackson is not related to Willie Jackson.

[4] Rodney Jackson is not related to Willie Jackson, who was the primary drug smuggler involved in the charged conspiracy.

21

Under well established legal precedent, all the aforementioned evidence is admissible under Federal Rule of Evidence 404(b) in order to establish the intent and the motive of the defendants to commit the charged offenses.[5] However, the United States will <u>not</u> refer to this evidence in its opening statement.   Therefore, the Court may consider the admissibility of the evidence as it arises during the government's presentation of its case-in-chief. With respect to defendants Newton and McHorne this will arise during the testimony of Rodney Jackson.

It is well settled that similar act evidence may be admitted in order to establish the intent and the motive of the defendant to commit the crimes charged in the indictment.   The Eleventh Circuit has held that the admissibility of such evidence is governed by a three part test. First, the evidence must be relevant to an issue other than the defendant's character.   Second, there must be sufficient proof that the defendant committed the act.   Third, the

---

[5] In addition, the evidence of McHorne's participation with Rodney Jackson in the importation and attempted importation of narcotics is admissible under the inextricably intertwined doctrine as direct evidence of the defendants's guilt in the charged conspiracy because this conduct occurred during the time period covered by the conspiracy charge.   It is well settled that evidence of a defendant's possession of a substantial quantity of cocaine, on a date within the time frame of a charged conspiracy, is admissible as being inextricably intertwined with the charged offense. <u>United States v. McClean</u>, 138 F.3d 1398, 1403-1404 (11th Cir. 1998); <u>United States v. Wells</u>, 995 F.2d 189, 191-92 911th Cir. 1993)(reversing decision of trial court to exclude evidence of defendant's possession of drugs during the scope of the charged conspiracy)

evidence must survive the balancing test prescribed by Federal Rule of Evidence 403. <u>United States v. Miller</u>, 959 F.2d 1535, 1538 (11th Cir. 1992)(en banc); <u>United States v. Utter</u>, 97 F.3d 509, 513 (11th Cir. 1996).

In applying this standard to prosecutions under the federal narcotics law, the Eleventh Circuit has consistently held that a defendant's prior, or subsequent, drug trafficking offense will generally be admissible to prove that he or she acted with the requisite intent in connection with the charged offense. Because the government has the heavy burden of proving intent, the balancing test under Rule 403 will also generally support the admissibility of prior and subsequent drug dealings. <u>United States v. Zapata</u>, 139 F.3d 1355, 1358 (11tth Cir. 1998) (affirming the use of similar act evidence in a narcotics prosecution and ruling that "a defendant who enters a not guilty plea makes intent an issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue."); <u>United States v. Cardenas</u>, 895 F.2d 1338, 1340-1345 (11th Cir. 1990).

In addition, the prior drug offense is admissible even if the drug involved in the prior offense was different from the drug charged in the instant offense, as is the case with the defendant Hall. <u>United States v. Diaz-Lizaraza</u>, 981 F.2d 1216, 1224 (11th Cir.

23

1993)("We find that evidence of Diaz's 1988 arrest for possessing marijuana with the intent to distribute was relevant to the issue of his intent to conspire to possess and distribute cocaine in the present case.")  Furthermore, although remoteness in time to the prior offense is a factor that the court should consider, a five year old drug conviction is probative of a defendant's state of mind in a drug conspiracy case. <u>United States v. Pollock</u>, 926 F.2d 1044, 1047-49 (11th Cir. 1991).

In applying these well settled principles to the similar act evidence in the instant case, it is clear that the evidence should be admitted.  The charged drug conspiracy began in or about 1988, and the convictions of both Hall and McHorne for drug trafficking are close in time to the formation of the conspiracy.  Moreover, the evidence in this case consists primarily of cooperating witnesses whose credibility concerning the intent of Hall and McHorne will be challenged by vigorous cross examination.  Thus, the prior convictions of Hall and McHorne are highly probative of their intent to commit the charged offenses.  Consequently, the prior drug activities of Hall, McHorne and Newton are admissible in order to establish their intent to engage in a narcotics conspiracy.

3.  <u>Records and Items Seized From Defendants</u>

There are numerous ways to authenticate a document or an object.  Federal Rule of Evidence 901 specifies that the

24

authenticity of a document may be established by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901 (a). This requirement may be satisfied by the testimony of a witness with knowledge that a matter is what it is claimed to be. Fed. R. Evid. 901(b)(1). In determining the authenticity of evidence, the court is not bound by the rules of evidence, and consequently, it may consider hearsay and other evidence in ruling on the admissibility of documentary evidence. See United States v. Bourjaily, 483 U.S. at 178 (the rules of evidence do not govern the Court's determination of the admissibility of evidence); Fed. R. Evid. 104(a)("In making its determination it [the court] is not bound by the rules of evidence except those with respect to privileges." It is well settled that "the government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990); United States v. Elkins, 885 F.2d 775, 785 (11th Cir. 1989), cert denied, 494 U.S. 1005 (1990).

The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed or when the object was seized. Factors to be considered are the nature of the article, circumstances surrounding its

25

preservation and custody, and the likelihood of others tampering with it.  There is, however, a presumption of regularity in the handling of exhibits by public officials.  United States v. Wood, 695 F.2d 459, 462 (10th Cir. 1982); United States v. Kaiser, 660 F.2d 727, 733 (9th Cir. 1981), cert. denied, 455 U.S. 956 (1982). Finally, it is not necessary that the Government establish all links in the chain of custody of an item or call each person who was in a position to come in contact with it.  See United States v. Wood, supra; United States v. Kaiser, supra; United States v. Reyes, 383 F.2d 734 (9th Cir. 1967).

   4.   Charts And Summaries Under Evidence Rule 1006

   The United States will offer into evidence charts that summarize various telephone toll records indicating telephone calls but were various members of the conspiracy.[6]  The United States will also be offering charts that summarize the various money laundering transactions.

   The United States relies on Federal Rule of Evidence 1006, which provides that "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  In cases where the amount of information and related documents are voluminous, the admission of summaries "offers the

---

   [6]  The underlying materials have long been available to defense counsel, and revised copies of the summary charts were provided to counsel via federal express sent on April 25, 2001.

only practicable means of making their contents available to the jury." See Notes of Advisory Committee to Rule 1006; see also United States v. Harmas, 974 F.2d 1262, 1269 (11th Cir.1992). The Eleventh Circuit has affirmed the government's use of telephone summary charts in a narcotics conspiracy case. United States v. Daniels, 986 F.2d 451, 455 (11th Cir. 1993). As in Daniels, the charts in this case will summarize telephone contacts between the members of the conspiracy at or around the time of known importations or seizures of narcotics at Port Everglades.

5. Plea Agreements

The United States anticipates that the testifying cooperating defendants will be impeached on cross-examination or in opening statement by defense counsel. Accordingly, the plea agreements are admissible evidence on re-direct examination or in direct examination if defense counsel impeaches the credibility of the cooperating defendant in opening statement. United States v. Knowles, 66 F.3d 1146, 1160(11th Cir. 1995) (collecting cases).

6. Prior Consistent Statements

The United States anticipates that defense counsel will seek to impeach the credibility of the cooperating witnesses by prior inconsistent statements. If this occurs, the United States will seek to rehabilitate the witness through the use of prior consistent statements. In this regard, it is important to note that the United States will frequently not be seeking to introduce

the prior consistent statement as substantive evidence under Fed R. Evid. 801(d)(1)(B). Instead, the United States may seek to use the prior consistent statement under well established case law that permits a prior consistent statement to be admitted for the limited purpose of rehabilitating the witness by clarifying and explaining the alleged inconsistent statement. This limited use of prior consistent statements is permitted even if the statement does not qualify as substantive evidence under Fed. R. Evid. 801(d)(1)(B). United States v. Ellis, 121 F.3d 908, 919-921 (4th Cir. 1997) (trial court properly admitted record of witnesses FBI interview for rehabilitation after defendant challenged her credibility on cross examination). Accord, United States v. Castillo, 14 F.3d 802, 805-806 (2d Cir. 1994); United States v. Casoni, 950 F.2d 893, 905 (3d Cir. 1991); United States v. Harris, 761 F.2d 394, 39-400 (7th cir. 1985). See also Weinstein's Federal Evidence § 803.12[1], pp. 801-28 through 801-29 (1998).

    7.   Background Testimony by Case-Agents

A number of government agents will testify during the United States' case. Their testimony will include background information to explain their presence in an area, or to explain their actions. Although this sort of testimony may include references to information or statements of third parties, it does not constitute hearsay; therefore, it is admissible.

Federal Rule of Evidence 801(c) defines an out of court

statement as hearsay if it is "offered in evidence to prove the truth of the matter asserted." As the Court noted in <u>United States v. Love</u>: "However, an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." 767 F.2d 1052, 1063 (4th Cir. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1081 (1986) citing <u>United States v. Scott</u>, 678 F.2d 606, 612 (5th Cir.), <u>cert</u>. <u>denied</u>, 459 U.S. 972 (1982). In <u>Love</u>, a DEA agent was allowed to testify about information he had learned from an agent in Florida about proposed landing sites in South Carolina. The testimony was not offered for its truth but simply to explain the agent's activities in preparing for the defendants' arrest. 767 F.2d at 1063.

The out of court statements of an informant to an agent are not hearsay and are admissible when offered for the limited purpose of explaining the background of an investigation. <u>United States v. Freeman</u>, 816 F.2d 558, 563 (10th Cir. 1987). The United States would propose limiting instructions be given to the jury at the time of such testimony and again prior to deliberations. This was the approach utilized in <u>Davis v. United States</u>, 411 F.2d 1126 (5th Cir. 1969).

8. <u>Witness Statements</u>

In this case, many cooperating defendants were interviewed by law enforcement agents. These interviews were reduced to Reports of Interview (ROI). These documents do not contain verbatim

29

statements of the person being interviewed, but are rather summaries of what the witness said based on the rough notes of the agent.

It is well settled that such reports do <u>not</u> constitute witness statements under 18 U.S.C. § 3500 or Fed. R. Crim. Pro. 26.2. Because these reports are not the statement of the witness their production is disfavored because they "would threaten the witness with impeachment on the basis of statements that they did not make." <u>United States v. Judon</u>, 581 F.2d 553, 555 (5th Cir. 1977). Indeed, in <u>United States Martinez</u>, 87 F.3d 731 (5th cir. 1996), the district court ordered the government to produce an agents report of what a witness had told the agent. The government resisted production and perfected a pre-trial appeal of the court's decision. 87 F.3d at 734. The Court reversed and reaffirmed its holding in <u>Judon</u> that reports of interviews by agents do not constitute Jencks Act material. Thus the holding in <u>Judon</u> remains valid and the United States is not obligated to disclose agent summary reports of witness interviews. <u>United States v. Martinez</u> 87 F.3d at 739.

Similarly, such reports of interview need not be disclosed if the agent testifies about a subject matter not covered in the report, e.g., the foundation evidence for a tape recording or the recovery of a document not discussed in a report. This is the case, because the Jencks Act requires only that a statement be

disclosed if it "relates to the subject matter concerning which the witnesses has testified." Fed. R. Crim. Pro. 26.2 <u>United States v. Keller</u> 512 F.2d 182 (3d Cir. 1975) ( where first two pages of police officers report were outside the purview of his direct testimony defense counsel was not entitled to discovery of such pages under the Jencks Act) See C. Wright <u>Federal Practice and Procedure</u> §437 at note 37 (1982 & 1990 Supp) (collecting cases).

However, in light of the Court's decision <u>Kyles v. Whitley</u>, 115 S.Ct. 1555, 1567 (1995) concerning the exculpatory nature of directly contradictory witness statements and to avoid lengthy <u>in camera</u> review, the United States will <u>voluntarily</u> provide redacted portions of agent summaries of witnesses interviews that relate directly to the testimony of the witness concerning the defendants presently on trial.  This production is <u>voluntary</u> and should not be construed as a waiver of the  government's position that the reports need not be disclosed to defense counsel.

31

## III CONCLUSION

The United states will brief any other issue of concern to the
Court as it arises during the course of the trial.

                              Respectfully submitted,
                              GUY A. LEWIS
                              UNITED STATES ATTORNEY

                    BY: _____
                        MICHAEL J. DITTOE
                        Assistant United States Attorney
                        Court ID #A5500209
                        500 E. Broward Blvd., Ste. 700
                        Ft. Lauderdale, FL 33394-3002
                        Tel: (954) 356-7392
                        Fax: (954) 356-7230

                    BY: _____
                        TERRENCE J. THOMPSON
                        ASSISTANT UNITED STATES ATTORNEY
                        COURT NO. A5500063
                        500 EAST BROWARD BLVD., SUITE 700
                        FORT LAUDERDALE, FL 33394

32

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Federal

Express this 30th day of April, 2001 to the following attorneys of record:.

Donald I. Bierman, Esq
Bierman, Shohat, Loewy & Klein, P.A.
800 Brickell Avenue, PH-2
Miami, FL 33131

(305) 358-7000
Attorney for Lark

Steve Kassner, Esq.
815 Ponce de Leon Blvd., Ste. 303
Coral Gables, FL 33134

(305) 461-2744
Attorney for Lampkin

Bruce H. Lehr, Esq.
1401 Brickell Ave., Ste. 810
Miami, FL 33131

(305) 377-1777
Attorney for Seymour

Larry Hanfield, Esq.
4770 Biscayne Blvd., Ste. 1200
Miami, FL 33137

(305) 576-1011
Attorney for Hall

Paul D. Lazarus, Esq.
800 Brickell Ave., PH-2
Miami, FL 33131

(305) 539-0606
Attorney for Crenshaw

Guy Speigelman, Esq.
28 W. Flagler St., Ste. 400
Miami, FL 33131

(305) 373-6634
Attorney for McHome

Reemberto Diaz, Esq.
1435 S. Miami Ave.
Miami, FL 33130

(305) 446-0001
Attorney for Hall

James D. Henderson, Esq.
12121 Wilshire Blvd., Ste. 1130
Los Angeles, CA 90025

(310) 478-3131
Attorney for Gallo

Martin R. Raskin, Esq.
Grove Forest Plaza, Ste. 206
2937 S.W. 27 Ave.
Miami, FL 33133

(305) 444-3400
Attorney for Gallo

William J. Cone, Jr., Esq.
514 S.E. Seventh St.
Ft. Lauderdale, FL 33301

(954) 764-0570
Attorney for Newton

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY